430 So.2d 959 (1983)
CITY OF COCONUT CREEK, City of Coral Springs, City of Dania, Town of Davie, City of Deerfield Beach, Town of Hillsboro Beach, City of Hollywood, Town of Lauderdale-by-the-Sea, City of Lauderdale Lakes, City of Lauderhill, City of Margate, City of Miramar, City of North Lauderdale, Town of Pembroke Park, City of Plantation, City of Pompano Beach, City of Sea Ranch Lakes, City of Tamarac, City of Wilton Manors, Florida, Appellants,
v.
BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.
Nos. 82-862, 82-1126.
District Court of Appeal of Florida, Fourth District.
May 4, 1983.
*960 Earl C. Gallop of Milledge & Hermelee, Miami, for appellants.
Harry A. Stewart, Gen. Counsel, and Edwin J. Stacker, Asst. Gen. Counsel, Fort Lauderdale, and Barbara Ross of Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for appellee.
ANSTEAD, Judge.
This is an appeal by twenty municipalities located in Broward County from a final summary judgment upholding the validity of provisions of the Broward County Land Development Code which vest final authority for plat approval of development projects, within and without the municipalities, in the county. We affirm.
Broward County acquired charter county status on March 1, 1975. Article VI of the Broward County Charter deals with land use planning. Section 6.05(D) of Article VI, amended in November, 1976, sets forth the requirement of a county land use plan to be adopted by the Board and provides that local governments may submit plans for certification also. In November, 1976, section 6.12 was amended to provide:
The legislative body of each municipality within Broward County and the County Commission for the unincorporated area shall, within six (6) months after the effective date of this Charter, create a mandatory plat ordinance.
No plat of lands lying within Broward County, either in the incorporated or unincorporated areas, may be recorded in the Official Records prior to approval by the County Commission. The County Commission shall enact an ordinance establishing standards, procedures and minimum requirements to regulate and control the platting of lands within the incorporated and unincorporated areas of Broward County. The governing body of each municipality may enact an ordinance establishing additional standards, procedures and requirements as may be necessary to regulate and control the platting of lands within its boundaries.
The County has implemented its land use plan by adoption of Ordinance 81-16, the Broward County Land Development Code, effective April 3, 1981. Division 4 of the Ordinance delineates platting procedures and requirements in municipal areas. Section 5-197 of Division 4 deals with the procedural requirements; section 5-198 outlines the substantive requirements for final plat approval by the Board. Briefly summarized, the substantive factors for independent review include:
(a) adequacy of regional transportation network,
(b) dedication of right-of-way for major roads,
(c) access to trafficways,
(d) adequacy of water management,
(e) adequacy of potable water service,
(f) adequacy of wastewater treatment and disposal services,
(g) adequacy of solid waste disposal sites and facilities,
(h) adequacy of regional parks and recreation facilities,
(i) consideration of impact on environmentally sensitive lands,
(j) consideration of toxic waste disposal sites and impact on air quality, and
(k) adequacy of school sites and school buildings.
*961 In November, 1977, the Board adopted the Broward County Land Use Plan. Article IV contains the following pertinent sections:
Section 2: GENERAL REQUIREMENTS OF THE COUNTY LAND USE PLAN

2.01 The County Land Use Plan shall be implemented by the adoption and enforcement of appropriate local regulations on the development of lands and waters within the jurisdiction of each unit of local government and no public or private development may be permitted except in compliance with the County Land Use Plan or a certified land use plan.
Section 3: CERTIFICATION OF LOCAL LAND USE PLANS

3.01 Each unit of local government may prepare, in conformance with the requirements of the County Land Use Plan and the Planning Act, a local land use plan for submittal to the Planning Council. The local land use plan shall be certified by the Planning Council prior to its final adoption by a unit of local government, in conformance with the Planning Act.
... .
Section 5: DEVELOPMENT REVIEW REQUIREMENTS

5.01 After the effective date of the County Land Use Plan, a unit of local government may grant an application for a development permit consistent with the County Land Use Plan or a certified land use plan when it has determined that the following requirements are met; ... .
The development review requirements of Section 5 pertain to:
(a) adequacy of potable water service,
(b) adequacy of wastewater treatment and disposal services,
(c) adequacy of solid waste disposal service,
(d) adequacy of drainage,
(e) adequacy of the regional transportation network,
(f) adequacy of local streets and roads,
(g) adequacy of fire protection service,
(h) adequacy of police protection service,
(i) adequacy of parks and recreation facilities, and
(j) adequacy of school sites and school buildings.
The municipalities qualify as units of local government under this plan. Eighteen of twenty have certified land use plans; fourteen have plat laws; only eight have adopted development review regulations.
The municipalities claim that the Board lacked the authority to adopt section 5-198; that the criteria of 5-198 duplicate those in section 5.01 of the County Land Use Plan; and that the Board's independent review of these criteria usurps the home rule powers of the municipalities. The municipalities do not challenge the authority of the County to certify local land use plans, to approve plats for recordation in the public record or the procedural requirements for plat approval and recordation set forth in section 5-197. Rather, they dispute the right of the Board to impose the substantive requirements contained therein. They assert that independent review of these factors for final plat approval improperly gives the Board a veto power over any prior approval given by the municipality and, therefore, usurps its home rule powers and conflicts with the land use planning scheme authorized by the legislature and adopted by the County. The County, on the other hand, contends that such veto power is necessary to insure consideration of countywide problems each time a development project is approved, and that ordinarily that is at the time of plat approval. The County also points out that it only retains the authority to veto, and does not have the authority to approve a plat request turned down by the municipality.
All of the municipalities in this action possess home rule powers. Home rule power of the municipalities is derived from article VIII of the Florida Constitution of 1968. Section 2(b) grants to each municipality the authority to conduct municipal government, perform municipal functions, render municipal services and exercise any *962 power for municipal purposes, unless expressly prohibited by the constitution, general or special law or county charter. See § 166.021(4), Fla. Stat. (1981), and State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978). However, Article VIII, section 1(g) of the constitution grants the following powers to charter counties:
Counties operating under county charters shall have all powers of local self-government not inconsistent with general law or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
Thus, the question of whether the county has usurped the power of the municipalities can ordinarily be answered by examining the charter and the general law.
Article VIII, General Provisions, section 8.04 of the Broward County Charter specifically deals with the problem of conflict, if any, of county ordinances with municipal ordinances. The charter declares:
Notwithstanding any other provisions of this Charter, any county ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict regardless of whether such municipal ordinance was adopted or enacted before or after the County ordinance provided that the county ordinance shall prevail over municipal ordinances whenever the County shall set minimum standards protecting the environment by prohibiting or regulating air or water pollution, or the destruction of the resources of the County belonging to the general public within the parameters set forth in Section 8.17 of this Charter. As set forth in this Charter, a county ordinance shall also prevail over a municipal ordinance in the area of land use planning. In the event a county ordinance and a municipal ordinance shall cover the same subject matter without conflict, both the municipal ordinance and the county ordinance shall be effective, each being deemed supplemental, one to the other.

(Emphasis supplied.) The challenged provisions of Section 5-198 deal, of course, with land use planning. In addition, section 125.86(7), Florida Statutes (1981), provides that charter counties have the power to:
Adopt, pursuant to the provisions of the charter, such ordinances of countywide force and effect as are necessary for the health, safety, and welfare of the residents. It is the specific legislative intent to recognize that a county charter may properly determine that certain governmental areas are more conducive to uniform countywide enforcement and may provide the county government powers in relation to those areas as recognized and as may be amended from time to time by the people of that county... .
That land use planning is necessary for the health, safety, and welfare of all county residents is clear from another Florida statute, the Local Government Comprehensive Planning Act of 1975. Section 163.3161(3) of the Act declares:
It is the intent of this act that its adoption is necessary so that local governments can preserve and enhance present advantages; encourage the most appropriate use of land, water, and resources, consistent with the public interest; overcome present handicaps; and deal effectively with future problems that may result from the use and development of land within their jurisdictions. Through the process of comprehensive planning, it is intended that units of local government can preserve, promote, protect, and improve the public health, safety, comfort, good order, appearance, convenience, law enforcement and fire prevention, and general welfare; prevent the overcrowding of land and avoid undue concentration of population; facilitate the adequate and efficient provision of transportation, water, sewerage, schools, parks, recreational facilities, housing, and other requirements and services; and conserve, develop, utilize, and protect natural resources within their jurisdictions.
*963 It is apparent that the Broward County Land Use Plan was the County's response to this legislative mandate; Ordinance 81-16, which includes section 5-198, merely implements the plan. An even more specific indication that the county's authority is paramount in the area of land use planning is contained in Section 163.3174(1)(b) of the Act which declares:
In the case of chartered counties, the planning responsibility between the county and the several municipalities therein shall be as stipulated in the charter.
Another legislative pronouncement, section 177.071(1)(a), Florida Statutes, provides that the municipality has exclusive jurisdiction to approve plats; however, section 177.071(2) states that if any provision in a county charter or ordinance is inconsistent with any provision in this section, the county charter shall prevail.
The net result of this analysis of the relevant provisions of the constitution, statutes, charter and ordinances is that, with regard to land use planning in general and to plat approval in particular, the county's authority is supreme.
The municipalities also suggest that the county should be limited to setting technical requirements for a plat as a map or delineated representation of the subdivision of lands. § 177.031(14), Fla. Stat. (1981). They construe the provision in section 6.12 of the county charter that the Board "shall enact an ordinance establishing standards, procedures and minimum requirements to regulate platting of lands" within the county to have reference to technical requirements only. They further assert that the only purpose of recording plats is "to serve to establish the identity of all lands shown, section 177.021, Florida Statutes (1981); and to inform the public, especially innocent purchasers, of facts regarding the property." Coffman v. James, 177 So.2d 25, 30 (Fla. 1st DCA 1965). However, this view fails to take into account the rest of the statutory definition, "being a complete exact representation of the subdivision of and other information in compliance with the requirement of all applicable sections of this chapter and of any local ordinances... ." § 177.031(14). Section 177.011 states that the platting statute establishes only minimum requirements to regulate and control the platting of lands and "does not exclude additional provisions or regulations by local ordinance, laws or regulations." The municipalities rely for their view on the Plat Act of 1953 which was superseded, to the extent of any inconsistencies, by the Broward County Charter in 1975. It also appears that the municipalities' narrow construction of the purpose of platting requirements was implicitly rejected in Kass v. Lewin, 104 So.2d 572, 579 (Fla. 1958), when the supreme court acknowledged that the legislature intended the plat act "to promote community planning."
The municipalities point to the decision of this court in Broward County v. Narco Realty, Inc., 359 So.2d 509 (Fla. 4th DCA 1978), in support of their view that the Board's responsibility in approving plats for recordation is purely ministerial. They interpret Narco to mean that the Board lacked discretion to refuse approval of the plat because the technical requirements had been met. However, the actual holding was that mandamus would lie because the parties had stipulated that all legal requirements had been met; thus, the Board had no discretion remaining under the facts of the case.
In Broward County v. Coral Ridge Properties, Inc., 408 So.2d 625 (Fla. 4th DCA 1982), this court distinguished Narco and reversed an order of mandamus. The City of Fort Lauderdale had approved a plat submitted by Coral Ridge, but the Board refused final approval because of a failure to meet all applicable legal requirements. The opinion acknowledged, at 626, that consideration of a plat involves discretion. It did not determine whether the Board had misapplied or misapprehended the legal requirements for plat approval, the very question addressed by this appeal, because of the form of the action, mandamus.
In our view, the challenged provisions deal not merely with the technical requirements *964 for plats, but with the requirements for plat approval and all of its attendant development consequences. The substantive requirements are consistent with the objectives of the constitution, the platting act, and chapters 163 and 177; thus, such requirements are authorized by the county charter. More importantly, it is clear that the county is vested with the substantive authority to retain veto power over the municipalities platting decisions to insure that development within the county is consistent with the overall scheme set out in the county's land use plan. To hold otherwise would be to deny the county effective, coordinated control over development within the entire county including the municipalities located therein. Without some overall supervision the municipalities would be free to make development decisions without consideration of their effect on adjacent communities. While the Planning Council exercises some authority to insure that local land use plans are enacted in conformance with the county-wide land use plan and that only local development projects consistent with the overall plan are permitted, its supervisory authority is still limited. It appears, for instance, that the Council exercises no control over platting. The County's authority fills this void.
Finally, we believe this case is covered by the provision "where a municipal ordinance and a county ordinance cover the same subject matter without conflict they shall be deemed supplemental and both shall be effective." Broward County Charter § 8.04. In two recent decisions this court has rejected challenges to the County's authority similar to those raised herein. Kane Homes, Inc. v. City of North Lauderdale, 418 So.2d 451 (Fla. 4th DCA 1982) and Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA 1983). Both of these decisions recognized the extensive authority that has been vested in a charter county in the realm of land use planning. A comparison of section 5-198 of Ordinance 81-16, the Broward County Land Development Code and section 5.01 of the Broward County Land Use Plan reveals immediately the lack of any substantial conflict. The criteria for final plat approval in the former are far more broad in scope than the criteria for development review in the latter. Any concern that the substantive requirements of section 5-198 are intended to refer only to matters of countywide concern should also be dispelled by a reading of section 5-199 of the county ordinances which specifies that such concerns as garbage collection, fire and police protection and local parks and recreational facilities shall not be the subject of independent review. Clearly, these are local concerns for which "the County shall rely on municipal review." In our view the county and municipal ordinances are supplemental and section 5-198 does not improperly infringe upon any right of the municipalities. Of course, even if there were a conflict with a municipal ordinance, under the legal analysis set out above, the county ordinance would prevail.
Accordingly, the judgment of the trial court is affirmed.
DOWNEY and HURLEY, JJ., concur.