480 So.2d 631 (1985)
BROWARD COUNTY, a Political Subdivision of the State of Florida, Petitioner,
v.
CITY OF FORT LAUDERDALE and Robert O. Cox, Respondents.
No. 66289.
Supreme Court of Florida.
December 19, 1985.
*632 Susan F. Delegal, Gen. Counsel and Janet Lander, Asst. Gen. Counsel, Fort Lauderdale, for petitioner.
Eugene L. Heinrich and Jeffrey A. O'Keefe of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for respondents.
William J. Roberts and Robert C. Apgar of Roberts, Egan & Routa, Tallahassee, amicus curiae for State Ass'n of County Comm'rs of Florida.
EHRLICH, Justice.
This case is before us to answer a question certified by a district court to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The Broward County Commission sought to regulate certain aspects of the sale of handguns in the county. In pursuing this goal, the commission held a county-wide referendum to amend the county charter. Pursuant to article VIII, section 1(g) of the Florida Constitution,[1] the charter provided that, with two exceptions, municipal ordinances would prevail when conflict arose with county ordinances. The amendments added a third exception providing that county ordinances relating to handgun control would prevail.[2] The amendments were *633 approved, and the commission enacted a handgun ordinance.
The city unsuccessfully sought an injunction to stop the referendum. It argued that article VIII, section 4 of the Florida Constitution[3] required a city-wide as well as county-wide referendum. Section 4 requires dual referenda whenever there is a transfer of any function or power from one governmental entity to another. The district court agreed with the city, reversed the trial court, and certified the following question:
WHETHER, IN A CHARTER COUNTY, A TRANSFER OF POWER OCCURS, THEREBY INVOKING THE PROVISIONS OF ARTICLE VIII, SECTION 4 OF THE CONSTITUTION OF THE STATE OF FLORIDA, WHERE, PURSUANT TO CHARTER AMENDMENT, A COUNTY ORDINANCE RELATING TO HANDGUN MANAGEMENT PREVAILS OVER A MUNICIPAL ORDINANCE RELATING TO THE SAME SUBJECT MATTER TO THE EXTENT OF ANY CONFLICT.
City of Fort Lauderdale v. Broward County, 458 So.2d 783, 786 (Fla. 4th DCA 1984). We answer the question in the negative and quash the decision below.
The problem arises because of the seemingly conflicting provisions of sections 1(g) and 4. If we construe "any function or power" in section 4 to give full effect to the all-encompassing adjective "any," then, assuming that virtually all ordinances constitute exercise of governmental power, all county preemptions pursuant to section 1(g) will be "transfers of power."
The circumstances of this case are the obverse of those in Sarasota County v. Town of Longboat Key, 355 So.2d 1197 (Fla. 1978), wherein we rejected the county's attempt to completely preempt five essential municipal functions under section 1(g) without the dual referenda required by section 4. We held that section 1(g) did not exempt a charter county from application of section 4: "We are ... reluctant to elevate the general provisions of Article VIII, Section 1(g) to a dominant position over the specific provisions of Article VIII, Section 4." Id. at 1201. In the case sub judice, to construe section 4 as having the breadth seemingly dictated by the troublesome adjective "any" would eviscerate section 1(g) and elevate section 4 to a dominant position. This we must not do.
It is a fundamental rule of construction of our constitution that a construction of the constitution which renders superfluous, meaningless or inoperative any of its provisions should not be adopted by the courts. Where a constitutional provision will bear two constructions, one of which is consistent and the other which is inconsistent with another section of the constitution, the former must be adopted so that both provisions may stand and have effect. Construction of the constitution is favored which gives effect to every clause and every part thereof. Unless a different interest is clearly manifested, constitutional provisions are to be interpreted in reference to their relation to each other, that is in pari materia, since every provision was inserted with a definite purpose.
Burnsed v. Seaboard Coastline Railroad, 290 So.2d 13, 16 (Fla. 1974) (citations deleted).
*634 Our task herein, then, must be to glean the intent of the framers and strike the balance necessary to give both provisions the effect intended.
Dean D'Alemberte's commentaries on the sections at issue offer an indication of intent. As to section 1(g):
This entirely new subsection provides for the broadest extent of county self-government or "home rule" as it is commonly described. It was taken with only editorial changes from the Revision Commission recommendation.
Under subsection (c) of this section [Art. VIII, § 1], charter governments may be established, amended or repealed only be general or special act which is approved by a vote of the electors of the county at a special election called for that purpose.
As a result of the provisions of subsections [sic] (f) of this section (non-charter government), the power which may be granted to county governments under a charter is the power to have county ordinances take precedence over municipal ordinances. Also, where the non-charter government may be empowered by the legislature to adopt ordinances as long as they are not inconsistent with general or special law, the charter counties may adopt ordinances as long as they are not inconsistent with general law.
Commentary to Art. VIII, § 1, Fla. Const., 26A Fla. Stat. Ann. (West 1970). As to section 4:
This section was taken from the Revision Commission recommendation. It is an entirely new section which gives to the legislature and to the various local governing units, special districts included, the authority to transfer powers. Such transfers under the 1885 Constitution, when not provided by the general power of the legislature over municipalities and counties, was accomplished by special constitutional amendment (see Article VIII, Section 10(a), Sections 12-21, and Article XX, Section 1). All of these specific provisions related to the assessment and collection of municipal taxes. In 1954, the 1885 Constitution was amended by a general provision (Article VIII, Section 22, House Joint Resolution 851, 1953, adopted in 1954) providing that the tax assessor and the county tax collector may by special or general act, with the approval of the electors of a municipality, be authorized to assess and collect municipal taxes.
Commentary to Art. VIII, § 4, Fla. Const., 26A Fla. Stat. Ann. (West 1970).
Section 1(g), as we conclude both from the commentary and an understanding of the constitutional scheme vis-a-vis charter counties, was intended to specifically give charter counties two powers unavailable to non-charter counties: the power to preempt conflicting municipal ordinances, and the power to avoid intervention of the legislature by special laws. The power to preempt is the power to exercise county power to the exclusion of municipal power. Preemption is a transfer of power, from exclusive municipal authority or concurrent authority, to exclusive county authority. It is clear from reading the transcripts of the Florida Constitution Revision Commission's discussion of preliminary versions of what would become section 1(g), that the preemption power was specifically included to eliminate the necessity of most if not all special laws when a charter county sought to preempt city ordinances in such areas as speed limits and other regulatory matters. Transcripts of Florida Constitution Revision Committee, Vol. 50 (1966) (available in Florida Supreme Court library). Section 4, on the other hand, was intended to provide for a more convenient procedure whereby local governments could transfer functions and powers without the cumbersome procedure of seeking a special law or constitutional amendment.
Thus, on the one hand the constitution has a provision intended to expand the power of charter counties, while on the other hand it includes a provision to expand the shared power of governmental units to transfer powers and functions. Both were intended to reduce the need for special laws and constitutional amendments. The *635 conflict arises when the expansive power of a charter county collides with the requirements of section 4. But section 4 did not contemplate giving municipalities veto power over a charter county's preemptive power. Rather, section 4 contemplated situations where a law authorizes dual referenda or where the city and county mutually desire to shift a function or power of the type which required special law or constitutional amendment under the 1885 constitution.
A line must be drawn between these overlapping provisions. We hold that section 1(g) permits regulatory preemption by counties, while section 4 requires dual referenda to transfer functions or powers relating to services. A charter county may preempt a municipal regulatory power in such areas as handgun sales when county-wide uniformity will best further the ends of government. § 125.86(7), Fla. Stat. (1983). Dual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services.
The case law on point reflects the underlying principle we now adopt. In Sarasota County, the county sought to preempt municipal control of air and water pollution control services and functions, parks and recreation, roads and bridges, planning and zoning, and police. The opinion includes the language from only one of the proposed charter amendments, relating to air and water pollution. It is clear from the language of that amendment that the county sought to consolidate all pollution control and enforcement under county authority. Presumably, the remaining amendments also sought to preempt broad control and enforcement powers. The wholesale assumption of the burden of providing what had been municipal services, going far beyond regulatory preemption, required dual referenda under section 4.
In City of Palm Beach Gardens v. Barnes, 390 So.2d 1188 (Fla. 1980), the issue of preemption under section 1(g) was not raised. However, the question of whether dual referenda were required under section 4 was at issue. The city in that case contracted with the county sheriff to provide police services to the city. This Court held that contracting for services, without divesting ultimate authority to supervise and control, did not constitute a transfer of powers vis-a-vis section 4. Thus, provision of services may be transferred without section 4 implications if the ultimate responsibility for supervising those services is not transferred.
In Miama Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981), opponents to a tourist development tax plan challenged a provision that would allocate some of the funds raised by the county to renovation of the city-owned Orange Bowl stadium. This Court rejected the argument that the plan was an unconstitutional transfer of powers since jurisdiction over the stadium would not be transferred. Instead, the county merely planned to make funds available to the city for the renovation. Again, control over municipal services was not transferred.
In City of Coconut Creek v. Broward County Board of County Commissioners, 430 So.2d 959 (Fla. 4th DCA 1983), the district court approved a county ordinance permitting county veto of municipally approved plats. While section 4 was not an issue in the decision, the district court found support in section 1(g) and direct statutory authority for this narrow exercise of county regulatory preemption.
We believe the distinction between regulatory preemption, and transfer of functions and powers relating to services, achieves the balance between sections 1(g) and 4 intended by the framers of the 1968 constitution.
Accordingly, the decision of the district court is quashed. We remand for action consistent with this opinion.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
NOTES
[1] (g) CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
[2] The language sought to be added to the county charter consisted of the following underscored provisions:

Section 8.04 CONFLICT OF COUNTY ORDINANCES WITH MUNICIPAL ORDINANCES.
Notwithstanding any other provisions of this Charter, any county ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict regardless of whether such municipal ordinance was adopted or enacted before or after the County ordinance, provided that the county ordinance shall prevail over municipal ordinances whenever the County shall set minimum standards protecting the environment by prohibiting or regulating air or water pollution, or the destruction of the resources of the County belonging to the general public within the parameters set forth in Section 8.17 of this Charter. As set forth in this Charter, a county ordinance shall also prevail over a municipal ordinance in the area of land use planning. A County ordinance shall also prevail over a municipal ordinance in matters relating to Handgun Management within the parameters set forth in Section 8.19 of this Charter. In the event a county ordinance and a municipal ordinance shall cover the same subject matter without conflict, both the municipal ordinance and the county ordinance shall be effective, each being deemed supplemental, one to the other.
Section 8.19 HANDGUN MANAGEMENT.
The County Commission may adopt a countywide ordinance relating to Handgun Management which may provide for law enforcement authorities to make criminal history checks for handgun purchasers prior to the delivery of a handgun not to exceed ten (10) days, exclusive of Saturdays, Sundays, and Holidays, and to provide standards for transfers of handguns and licensing of handgun dealers.
458 So.2d at 784, n. 3.
[3] The section states:

Transfer of powers.  By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Art. VIII, § 4, Fla. Const.