Mr. Russell J. Morrison Assistant Port Attorney for the Port Everglades Authority 1850 Eller Drive Fort Lauderdale, Florida 33316
Mr. Alan Koslow Hollywood City Attorney 2600 Hollywood Boulevard Hollywood, Florida 33020
Dear Gentlemen:
You have asked for my opinion on substantially the following question:
May the Port Everglades Authority assign its police function to the City of Hollywood and contract for performance of this police function throughout the port's jurisdiction which includes areas within the City of Hollywood, the City of Fort Lauderdale, the City of Dania, and the unincorporated areas of Broward County without complying with the voter referendum requirements imposed by s. 4, Art. VIII, State Const.?
In sum:
Pursuant to s. 4, Art. VIII, State Const., dual referenda would be necessary to transfer ultimate responsibility for supervising law enforcement services rom the Port Everglades Authority to another local governmental entity, although a contractual arrangement which does not divest the ultimate authority of the port authority to supervise law enforcement services does not require dual referenda. However, in the absence of a provision of general or special law, the City of Hollywood may not exercise extraterritorial law enforcement powers on behalf of the Port Everglades Authority outside its own municipal boundaries.
The City of Hollywood has joined in this opinion request.
The Charter of the Port Everglades Authority[1] authorizes this legal entity
[t]o provide for the protection of persons and property within the Port Jurisdictional Area[2] by establishing and maintaining a police force . . . as hereinafter provided, or by contracting with another governmental entity to provide police . . . protection within the Port Jurisdictional Area.[3]
The authority is also empowered to "adopt and enforce regulations controlling the movement of persons and vehicles over walkways, roads, parking areas, docks, piers, and elsewhere within the Port Jurisdictional Area . . . ."[4]
The Legislature has granted the Port Everglades Authority broad law enforcement and traffic control authority. The authority possesses exclusive jurisdiction over all streets and highways within the Port Jurisdictional Area except state roads and may exercise the powers granted local authorities by s. 316.008, F.S.[5]
With regard to general law enforcement authority, the port authority may establish and maintain a police force for the protection of people and property within the Port Jurisdictional Area.[6] The charter provides that:
Police officers employed by the Port Authority are hereby declared to be law enforcement officers of the state and conservators of the peace with the right to enforce all state laws, applicable local laws, and regulations of the Port Authority; to arrest, in accordance with the laws of the state, any person for any violation of state law, applicable local law, or a regulation adopted by the Port Authority when such violation occurs on any property or facilities under the jurisdiction of the Port Authority; and to arrest any person against whom a warrant has been issued. Such officers shall have full authority to bear arms in the performance of their duties and to execute search warrants within the Port Jurisdictional Area and within foreign trade zones established by the Port Authority.[7]
According to your letter, the Port Everglades Authority wishes to transfer its police power to the City of Hollywood and thereafter the city will exercise law enforcement authority throughout the jurisdictional area of the port on behalf of the port authority.
Pursuant to s. 4, Art. VIII, State Const.:
By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Thus, a special district, such as the Port Everglades District,[8]
may transfer its police power or function to another special district or to a municipality or county by utilizing this constitutional provision.
In City of Palm Beach Gardens v. Barnes,[9] The Supreme Court of Florida considered a contract between the city and the sheriff of Palm Beach County for the sheriff's performance of law enforce-ment services for the city. The only issue in the case was whether law enforcement agreements between municipalities and sheriffs are governed by s. 4, Art. VIII, State Const. The Court found that the constitutional provision was not applicable, and therefore, no separate vote of both the city and county electors was required. It was determined by the Court that the sheriff was a county officer but was acting as an independent contractor when he contracted to provide personal services and equipment to the city. The sheriff's contracting for services with a municipality was differentiated from a municipality transferring or contracting away the authority to supervise and control its police powers to the county government.
The Court in the Barnes case distinguished Sarasota County v. Town of Longboat Key,[10] an earlier case in which the entire police power function of the Town of Longboat Key was absorbed by the county government and the town no longer had any supervisory or other control of its police power function. The county attempted to transfer this and several other governmental responsibilities by ordinance to the county. The Court stated:
A plain reading of Article VIII, Section 4 reflects that a transfer of governmental powers requires distinctive procedures for the initiation of a transfer, that is, "by law or by resolution of the governing bodies of each of the governments affected." We think it clear from the specificity of the procedure in Section 4 that the "by law" reference connotes the need for a separate legislative act addressed to a specific transfer . . . .[11]
Because the procedure by which the county proposed to transfer powers and functions from the cities to the county did not comport with s. 4, Art. VIII, State Const., the Court found that the county's resolution was of no effect.
Most recently, The Supreme Court of Florida has, based on this earlier case law, distinguished between circumstances in which a local government's regulatory authority is to be transferred and instances involving the transfer of functions or powers relating to services.
In Broward County v. City of Fort Lauderdale,[12] the Court stated that "[d]ual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services."[13] Using Sarasota County v. Town of Longboat Key, supra, as an example, the Court pointed out that in that case the county sought to preempt broad control and enforcement powers: "The wholesale assumption of the burden of providing what had been municipal services, going far beyond regulatory preemption, required dual referenda under section 4."[14] Contrasting City of Palm Beach Gardens v. Barnes,[15] the Court held that contracting for services, without divesting ultimate authority to supervise and control, does not constitute a transfer of powers pursuant to s. 4, Art. VIII, State Const. Thus, according to the Court, "provision of services may be transferred without section 4 implications if the ultimate responsibility for supervising those services is not transferred."[16]
Thus, dual referenda would be necessary to transfer ultimate responsibility for supervising law enforcement services from a municipality to a local governmental entity with county-wide jurisdiction, although a contractual arrangement which does not divest the ultimate authority of the municipality to supervise law enforcement services does not implicate s. 4, Art. VIII, State Const.
However, because the contemplated transfer of powers pursuant to s. 4, Art. VIII, State Const., is from a county-wide special district to a municipality, s. 2(c), Art. VIII, State Const., involving the exercise of extraterritorial power by municipalities also applies.
The governmental power inherent in and exercised by a municipality is restricted to the area within its boundaries. Section 2(c), Art. VIII, State Const., requires that the "exercise of extraterritorial powers by municipalities shall be as provided by general or special law."[17]
This office has previously determined that the authority to transfer or contract out municipal functions or powers contained in s. 2(c), Art. VIII, is tempered by the provisions of s. 4, Art. VIII, State Const.[18]
Thus, in AGO 82-52 this office concluded that "cross swearing" of police officers by municipalities and the exercise of police powers and functions in neighboring municipalities is authorized only upon compliance with the requirements of ss. 2(c) and 4, Art. VIII, State Const. As the opinion points out, s. 2(c), Art. VIII, State Const., permits the exercise of extraterritorial powers by municipalities when provided by general or special law, and s. 4, Art. VIII, State Const., provides that the transfer and contracts contemplated by s. 4, may be effected as specified therein, and "as otherwise provided by law." In AGO 82-52 the transfer of law enforcement functions between municipalities was to be facilitated by a voluntary cooperation agreement pursuant to the Florida Mutual Aid Act, Part I, Ch. 23, F.S., thus, satisfying the requirement that the exercise of extraterritorial powers be as provided by general or special law.
Therefore, while s. 4, Art. VIII, State Const., authorizes a special district, such as the Port Everglades Authority, to contract with or transfer its law enforcement powers or functions to a municipality, s. 2(c), requires that extraterritorial powers be exercised by a municipality only "as provided by general or special law."[19]
I am aware of no special law authorizing the City of Hollywood to exercise extraterritorial law enforcement powers in the Port Jurisdictional Area outside the municipality's boundaries.[20]
However, with regard to provisions of general law, the parties may wish to consider whether some arrangement such as a mutual aid agreement pursuant to Part I, Ch. 23, F.S., or an interlocal governmental agreement pursuant to s. 163.01, F.S., would meet their needs.
This conclusion should not be considered to diminish or affect in any way the home rule powers of municipalities to provide law enforcement services within their own municipal boundaries. To the extent this opinion conflicts with earlier opinions on this subject, those opinions are receded from and this opinion will control.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Chapter 59-1157, Laws of Florida, and all amendments to it may be cited as the "Charter of the Port Everglades Authority" pursuant to Part I, s. 2(1), Ch. 89-427, Laws of Florida.
[2] The legal description of the "Port Jurisdictional Area" is contained in Part II, s. 2, Ch. 89-427, Laws of Florida.
[3] Part III, s. 2(5), Ch. 89-427, Laws of Florida.
[4] Part III, s. 2(20), Id.
[5] Part X, s. 1(1), Id.
[6] Part V, s. 6(1), Id.
[7] Part V, s. 6(2), Id.
[8] Pursuant to Part II, s. 1, Ch. 89-427, Laws of Florida, the Port Everglades District is an independent special district.
[9] 390 So.2d 1188 (Fla. 1980).
[10] 355 So.2d 1197 (Fla. 1978).
[11] Id. at 1201.
[12] 480 So.2d 631 (Fla. 1985).
[13] Id. at 635.
[14] Id.
[15] 390 So.2d 1188 (Fla. 1980).
[16] Supra at Footnote 14.
[17] See also, s. 166.021(3)(a), (4), F.S., relating to the exercise of extraterritorial powers by municipalities, and cf., s.180.02(2), F.S., authorizing municipalities to extend and execute their corporate powers outside city limits for municipal public works, but see, AGO 82-1 concluding that absent statutory authority therefor, a municipality possessed no extraterritorial power to operate and maintain or contract for the operation and maintenance of a private utility system owned by a private nonprofit corporation for the use and benefit of persons and properties located outside its corporate limits and to utilize municipal personnel to carry out such operational functions and service.
[18] Attorney General Opinion 82-52 ("cross swearing" of police officers by municipalities and exercise of police powers and functions in neighboring municipalities is authorized only upon compliance with the requirements of s. 4 and s. 2[c], Art. VIII, State Const.).
[19] See, State v. Hayles, 240 So.2d 1 (Fla. 1970) (all statutes relating to same subject matter should be so construed with reference to each other that effect may be given to all the provisions of each if this can be done by any fair and reasonable construction), and State ex rel. McKay v. Keller, 191 So. 542
(Fla. 1939) (In general, principles of construction applicable to statutes are also applicable to Constitutions, but not to the extent of defeating the purposes for which a Constitution is drawn).
[20] While Part V, s. 6(2), Ch. 89-427, Laws of Florida, provides that "[p]olice officers employed by the Port Authority are hereby declared to be law enforcement officers of the state and conservators of the peace with the right to enforce all state laws, applicable local laws, and regulations of the Port Authority . . ." I cannot conclude that this general grant of authority constitutes a special law authorizing a municipality to exercise extraterritorial powers as required by s. 2(c), Art. VIII, State Const.