Mr. John G. Hubbard Dunedin City Attorney Post Office Box 1178 Dunedin, Florida 34698
Dear Mr. Hubbard:
You have asked for my opinion on substantially the following questions:
1. Does a municipality's contract for law enforcement services with the sheriff constitute a "consolidation or merger of governments or the transfer of functions between units of governments" within the scope of section 112.0515, Florida Statutes?
2. Does the reference in section 112.0515, Florida Statutes, to pension rights and benefits relate to rights and benefits accrued prior to any consolidation or merger of governments?
In sum:
1. The contractual arrangement between a municipality and a sheriff for the performance of law enforcement services to be provided by the sheriff does not constitute a consolidation or merger of governments or a transfer of functions between units of government for purposes of section 112.0515, Florida Statutes.
2. Based on my answer to your first question, your second question is moot, i.e., section 112.0515, Florida Statutes, does not apply to the contractual arrangement being proposed.[1]
According to your letter, the City of Dunedin is contracting with the Pinellas County Sheriff for law enforcement services effective October 1, 1995. As a result of the pending contract, several issues have arisen regarding the City of Dunedin Police Officers' Pension Plan.
Pursuant to section 112.0515, Florida Statutes:
It is hereby declared to be the policy of this state that in any consolidation or merger of governments or the transfer of functions between units of governments either at the state or local level or between state and local units, the rights of all public employees in any retirement or pension fund shall be fully protected. No consolidation or merger of governments or governmental services, either state or local, accomplished in this state shall diminish or impair the rights of any public employee in any retirement or pension fund or plan which existed at the date of such consolidation or merger and in which the employee was participating, nor shall such consolidation or merger result in any impairment or reduction in benefits or other pension rights accruing to such employee.
There is no indication in Part I, Chapter 112, Florida Statutes, of what is meant by "consolidation or merger of governments or the transfer of functions between units of governments." While there are no direct statutory definitions provided for these terms, the Florida Constitution does deal with consolidation and transfer of powers.
Article VIII, State Constitution, addresses local government issues. Section 3, Article VIII, states that:
Consolidation. — The government of a county and the government of one or more municipalities located therein may be consolidated into a single government which may exercise any and all powers of the county and the several municipalities. The consolidation plan may be proposed only by special law, which shall become effective if approved by vote of the electors of the county, or of the county and municipalities affected, as may be provided in the plan. Consolidation shall not extend the territorial scope of taxation for the payment of pre-existing debt except to areas whose residents receive a benefit from the facility or service for which the indebtedness was incurred.
Regarding a transfer of powers, section 4, Article VIII, provides that:
Transfer of powers. — By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Florida courts have elaborated on the nature of both a consolidation and a transfer of powers within the scope of the Florida Constitution. In Sarasota County v. Town of Longboat Key,[2] the Florida Supreme Court considered whether a county ordinance accomplished a transfer of powers or a consolidation. Sarasota County had adopted an ordinance proposing five amendments to the county charter which would transfer responsibility for performing five distinct governmental functions from four cities within the county to the county itself. The Florida Supreme Court was asked to consider whether an unconstitutional "consolidation" had been attempted in violation of Article VIII, section 3.
In delineating the process of consolidation the Court stated that:
The process provided in [Article VIII, Section 3, Florida Constitution] is the unification of the government of a county and the government of one or more municipalities `into a single government', which would then exercise the powers previously held by both or all of the consolidated units. This provision of the Constitution applies only when one or more of the underlying governments disappears or is merged into the government of the surviving unit.[3]
The Court then went on to discuss the mechanics of a transfer within the scope of Article VIII, section 4:
A plain reading of Article VIII, section 4, reflects that a transfer of governmental powers requires distinctive procedures for the initiation of a transfer, that is, `by law or by resolution of the governing bodies of each of the governments affected.'[4]
Based on an analysis of the goal to be accomplished by Sarasota County's ordinance, the Court determined that the county's five proposed amendments constituted attempts to transfer powers and functions from the cities to the county within the scope of Article VIII, section 4, rather than attempts at consolidation. Reading the language of Article VIII, section 3, Florida Constitution, together with the Florida Supreme Court's analysis of this provision in the Sarasota County case, it is my opinion that the proposed contract between the City of Dunedin and the Pinellas County Sheriff does not constitute a "consolidation" within the scope of the Constitution.
The issue in the subsequent case of City of Palm Beach Gardens v. Barnes,[5] was whether a contract between the city and a county sheriff for the performance of law enforcement services for the city was governed by Article VIII, section 4, Florida Constitution, imposing certain requirements for the transfer of functions between governmental units. The Florida Supreme Court determined that this arrangement constituted a contract for services not subject to the constitutional requirements applicable to a transfer of governmental powers.
The Court noted that section 4 authorized the functions or powers of counties, municipalities, or special taxing districts to be transferred or contracted to be performed by the other entity after voter approval by the electors of the transferor and the voters of the transferee. As the Court stated, this constitutional procedure "is, in effect, a means to partially consolidate certain local governmental powers and functions for better efficiency without requiring total consolidation."[6]
The Court distinguished between the county itself as a governmental entity and the sheriff:
A sheriff is a `county officer' under section 1(d) of article VIII, but, as such, he is not prohibited by the provisions of section 4 from providing personal services and equipment as an independent contractor to a municipality. The sheriff, although a county official, is not the county taxing entity contemplated by section 4. In our opinion, the framers of section 4 had no intention of applying its provisions to a sheriff as a county official, and his contracting for services with a municipality is clearly different from a municipality transferring or contracting away the authority to supervise and control its police powers to the county government.[7]
The Court distinguished between the contractual arrangement in City of Palm Beach Gardens and the situation in the Sarasota County case in which the entire police power function of the Town of Longboat Key was being absorbed by the county government and the town no longer would have any supervisory or other control of the police power function. The Court determined that the agreement between the sheriff of Palm Beach County and the City of Palm Beach Gardens was a contract for services outside the scope of section 4, Article VIII.
Most recently, the Supreme Court of Florida has, based on this earlier case law, distinguished between circumstances in which a local government's regulatory authority is to be transferred and instances involving the transfer of functions or powers relating to services.
In Broward County v. City of Fort Lauderdale,[8] the Court stated that "[d]ual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services."[9] Using Sarasota County v. Town of Longboat Key, supra, as an example, the Court pointed out that in that case the county sought to preempt broad control and enforcement powers: "The wholesale assumption of the burden of providing what had been municipal services, going far beyond regulatory preemption, required dual referenda under section 4."[10] Contrasting City of Palm Beach Gardens v. Barnes, the Court held that contracting for services, without divesting ultimate authority to supervise and control, does not constitute a transfer of powers pursuant to section 4, Article VIII of the Florida Constitution. Thus, according to the Court, "provision of services may be transferred without section 4 implications if the ultimate responsibility for supervising those services is not transferred."[11]
You have not provided this office with details of the proposed contract between the City of Dunedin and the Pinellas County Sheriff for law enforcement services. However, it is my opinion that a contractual arrangement between the city and the sheriff for law enforcement services in which the city continues to maintain some supervisory or other control of the police power function would not constitute "consolidation or merger of governments or the transfer of functions between units of government" within the scope of sections 3 or 4, Article VIII, State Constitution, or section 112.0515, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Cf., Op. Att'y Gen. Fla. 73-383 (1973), concluding that, neither s. 112.0515, nor any other provision of general law would require the county to pay municipal court employees who, upon abolishment of a municipal court, become county employees, a longevity bonus as part of the annual compensation or salary of such employees, or to continue to compensate such employees on the basis prescribed by the pay plan of their former employer.
[2] 355 So.2d 1197 (Fla. 1978).
[3] Id. at 1199.
[4] Supra, footnote 2 at 1201.
[5] 390 So.2d 1188 (Fla. 1980).
[6] Id. at 1189.
[7] Id.
[8] 480 So.2d 631 (Fla. 1985).
[9] Id. at 635.
[10] Id.
[11] See, Op. Att'y Gen. Fla. 90-77 (1990), in which this office concluded that pursuant to s. 4, Art. VIII, State Const., dual referenda would be necessary to transfer ultimate responsibility for supervising law enforcement services from the Port Everglades Authority to another local governmental entity, although a contractual arrangement which does not divest the ultimate authority of the port authority to supervise law enforcement services does not require dual referenda; and Op. Att'y Gen. Fla. 92-33 (1992) ("[I]f the Village of Key Biscayne seeks to transfer to the City of Miami its supervision and control of firefighting, rescue and fire inspection services, the provisions of s. 4, Art. VIII, State Const., must be followed. If ultimate control and supervision of such services are retained by the village, however, then a contract for the provision of firefighting, rescue and fire inspection by the City of Miami, does not have to be approved by dual referenda.)