The Honorable Dorothy H. Wilken Clerk of the Circuit Court Fifteenth Judicial Circuit Post Office Box 229 West Palm Beach, Florida 33402-0229
Dear Ms. Wilken:
As county auditor for Palm Beach County,[1] you ask substantially the following question:
May Palm Beach County enter into an interlocal agreement with the Palm Beach County Health Care District for the transfer of the Palm Beach County Home and General Care Facility to the district from the county without a voter referendum as provided in section 4, Article VIII, of the State Constitution?
In sum:
An interlocal agreement between Palm Beach County and the Palm Beach County Health Care district whereby the district will manage and operate the Palm Beach County Home and General Care Facility and provide funding for Medicaid Match in return for annual cash payments from the county does not constitute a transfer of power that would require a referendum as provided in section 4, Article VIII, of the State Constitution.
The Palm Beach County Health Care District (district) was created by Chapter 87-450, Laws of Florida, as amended, and approved by voter referendum, as a county-wide health care district to provide comprehensive planning, funding, and coordination of health care delivery for indigent and medically needy residents of Palm Beach County. The district's program includes preventive health services, community nursing services, ambulatory care, outpatient services, hospital services, trauma health services, and rehabilitative services.
You have provided a copy of the interlocal agreement between Palm Beach County (county) and the district wherein the county will lease the Palm Beach County Home and General Care Facility (county home), a county-owned facility providing nursing home and long-term care for indigents, to the district. Under the agreement the district will be responsible for providing Medicaid Match funding[2] and for the management and operation of the county home. The district shall lease with the option to purchase the real property used in connection with the county home and purchase all of the personal property, assets and obligations of the county home. In return and subject to annual appropriation by the county commission, the county will pay the district fifteen million dollars per year. The agreement recognizes that the county retains the authority to terminate the agreement by nonappropriation of funds.[3]
The Interlocal Agreement Act, section 163.01, Florida Statutes, authorizes counties, municipalities and special districts to exercise jointly through an interlocal agreement "any power, privilege, or authority which such agencies share in common and which each might exercise separately." In instances where there is a complete transfer of a power or authority, however, the authority to transfer a function by interlocal agreement is tempered by the provisions of section 4, Article VIII, State Constitution.[4]
Section 4, Article VIII, provides that:
Transfer of powers. — By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Florida courts have elaborated on the nature of a transfer of powers within the scope of the Florida Constitution. In Sarasota County v. Town of Longboat Key,[5] the Florida Supreme Court considered whether a county ordinance proposing amendments to the county charter to transfer responsibility for performing five distinct governmental functions — air and water pollution control, parks and recreation, roads and bridges, planning and zoning, and police — from four cities within the county to the county itself was a transfer of powers or a consolidation.
Based on an analysis of the goal to be accomplished by the ordinance, the Court determined that the county's proposed amendments constituted an attempt to transfer powers and functions from the cities to the county within the scope of Article VIII, section 4, rather than an attempt at consolidation.
In City of Palm Beach Gardens v. Barnes,[6] the issue was whether a contract between the city and a county sheriff for the performance of law enforcement services for the city was governed by Article VIII, section 4, Florida Constitution. The Florida Supreme Court determined that this arrangement constituted a contract for services not subject to the constitutional requirements applicable to a transfer of governmental powers.
The Court noted that section 4 authorized the functions or powers of counties, municipalities, or special taxing districts to be transferred or contracted to be performed by the other entity after voter approval by the electors of the transferor and the voters of the transferee. As the Court stated, this constitutional procedure "is, in effect, a means to partially consolidate certain local governmental powers and functions for better efficiency without requiring total consolidation."[7]
The Court distinguished between the contractual arrangement in City of Palm Beach Gardens and the situation in the Sarasota County case in which the entire police power function of the Town of Longboat Key was being absorbed by the county government and the town no longer would have any supervisory or other control of the police power function. The Court determined that the agreement between the sheriff of Palm Beach County and the City of Palm Beach Gardens was a contract for services outside the scope of section 4, Article VIII.
In Broward County v. City of Fort Lauderdale,[8] the Court stated that "[d]ual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services."[9] Using Sarasota County v. Town of Longboat Key, supra, as an example, the Court pointed out that in that case the county sought to preempt broad control and enforcement powers: "The wholesale assumption of the burden of providing what had been municipal services, going far beyond regulatory preemption, required dual referenda under section 4."[10] Contrasting City of Palm Beach Gardens v. Barnes, the Court held that contracting for services, without divesting ultimate authority to supervise and control, does not constitute a transfer of powers pursuant to section 4, Article VIII of the Florida Constitution. Thus, according to the Court, "provision of services may be transferred without section 4 implications if the ultimate responsibility for supervising those services is not transferred."[11]
Under the rationale of the above cases, section 4, Article VIII, Florida Statutes, requires a referendum only when there has been a complete transfer of a county function. The payment of Medicaid Match funds and the operation of the county home is merely a part of the county's general function of providing health care to its residents. There is no statutory obligation for the county to provide a county home. Rather creation of the county home was undertaken to fulfill, in part, the county's obligation to provide for the health care needs of its indigent residents. Similarly, the payment of Medicaid Match funds is only a part of the county's general provision of health care. This conclusion is supported by the terms of the interlocal agreement providing that the district will not be responsible for any of the county's other health care obligations.[12] Thus, the lease of the county home real property and the sale of its assets to the district and the responsibility of the district to pay Medicaid Match funds would not, therefore, constitute a complete transfer of the county's obligation to provide health care to its citizens.
Moreover, the county has not divested itself of all control under the terms of the agreement. Subject to the agreement, the district may not assign, mortgage, pledge, or encumber the premises, nor sublet such premises without prior written consent of the county.[13] The district is required to file quarterly financial and operating reports relating to its performance under the interlocal agreement. Prior to each fiscal year, the district is required to deliver its proposed plans and budget to the county.[14]
The county has advised this office that the district's budget must include descriptions of the service categories to be funded, the target populations to be served, the estimate of the unmet need and a quality assurance plan. While the county does not approve such plans or budget, the county retains authority to not appropriate the district's funding. The district must establish a separate account for payments received from the county and use the funds provided by the county for the Medicaid Match funding, county home and the health care services and programs that are described in the agreement.
Accordingly, it is my opinion that Palm Beach County and the Palm Beach Health Care District may enter into an interlocal agreement whereby the district will manage and operate the Palm Beach County Home and General Care Facility and provide funding for the Medicaid Match in return for annual cash payments from the county without referendum approval as provided in section 4, ArticleVIII, Florida Constitution.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 129.09, Fla. Stat., imposes personal liability upon any clerk of the circuit court, acting as county auditor, who signs any warrant for the payment of any claim or bill or indebtedness against any county funds in excess of the expenditure allowed by law, or county ordinance, or to pay any illegal charge against the county, or to pay any claim against the county not authorized by law, or county ordinance.
[2] Section 409.915, Fla. Stat., recognizes that although the state is responsible for the full portion of the state's share of matching funds required for the Medicaid program, a portion of the funds may be charged to the counties for certain items of care and service. Section 409.915(6), Fla. Stat., provides that in any county in which a special taxing district or authority is located that will benefit from the medical assistance programs covered by the section, the county commission may divide the county's financial responsibility for this purpose proportionately so that each district or authority must pay its own share.
[3] See, s. 5, Part E of the Interlocal Agreement, stating that in the event the county fails to appropriate funding, such failure does not constitute a default under the agreement. The district has sole discretion to cause the county to reacquire all of the property and assets of the county home and such action relieves the district of the obligation to fund Medicaid Match payments.
[4] See, Ops. Att'y Gen. Fla. 74-220 (1974) and 90-77 (1990).
[5] 355 So.2d 1197 (Fla. 1978).
[6] 390 So.2d 1188 (Fla. 1980).
[7] Id. at 1189.
[8] 480 So.2d 631 (Fla. 1985).
[9] Id. at 635.
[10] Id.
[11] See, Ops. Att'y Gen. Fla. 93-93 (1993) (contract between town and sheriff transferring town's law enforcement functions to the sheriff did not require referendum approval since town retained ultimate control by contract provision permitting termination of contract upon sixty days notice); 90-77 (1990) (contractual arrangement which does not divest ultimate power of a port authority to supervise law enforcement services does not require dual referenda); and 92-33 (1992) ("[I]f the Village of Key Biscayne seeks to transfer to the City of Miami its supervision and control of firefighting, rescue and fire inspection services, the provisions of s. 4, Art. VIII, State Const., must be followed. If ultimate control and supervision of such services are retained by the village, however, then a contract for the provision of firefighting, rescue and fire inspection by the City of Miami, does not have to be approved by dual referenda.")
[12] See, Part D of the Interlocal Agreement which states that in consideration for the district's compliance with the terms and provisions contained therein, the county acknowledges that during the term of the agreement no further health care or health care related obligations of the county of any kind will be transferred to, delegated to, or otherwise required of the district by the county.
[13] Section 16.5, Part C of the Interlocal Agreement.
[14] Section 3, Part B of the Interlocal Agreement.