Mr. Edward Paul Kreiling Attorney for the Broward County Charter Review Commission Weston Corporate Centre 2500 Weston Road, Suite 220 Weston, Florida 33331
Dear Mr. Kreiling:
On behalf of the Broward County Charter Review Commission, you ask substantially the following question:
Does the adoption of a charter provision creating the Broward County Fire Services and Standards Council to develop countywide standards regulating the provision of fire and rescue services, addressing such issues as uniform fees, standardized dispatch, and minimum levels of emergency services, constitute a transfer of powers as contemplated by Article VIII, section 4, Florida Constitution?
In sum:
The adoption of a charter provision creating the Broward County Fire Services and Standards Council to develop countywide standards regulating the provision of fire and rescue services, addressing such issues as uniform fees, standardized dispatch, and minimum levels of emergency services, does not constitute a transfer of powers as contemplated by Article VIII, section 4, Florida Constitution.
According to your letter, the Broward County Charter Review Commission is considering a proposal to amend the Broward County Charter to provide for the establishment of a fire services and standards council (FSSC). The amendment, proposed as section 5.03 of the charter, provides for the creation, membership and terms of office of the council and its members. Section 5.03(C) provides:
"C. Within two years from the adoption of these provisions, the FSSC shall transmit proposed regulations to the County Commission which shall adopt a countywide ordinance regulating fire and rescue services. The ordinance adopted by the County Commission shall prevail over a municipal ordinance to the extent of any conflict. The ordinance shall provide at a minimum for the following:
(1) Regulations requiring that the closest appropriate unit shall respond in life threatening emergencies regardless of jurisdictional boundaries; (2) Regulations that standardize dispatch criteria, software, policies and practices throughout the County; (3) Regulations providing for a standard county-wide minimum level of emergency service for all jurisdictions providing such services; (4) Regulations creating a uniform schedule of fees for services charged to receiving jurisdictions by providing jurisdictions; and (5) Regulations providing that only the receiving jurisdiction may invoice for emergency services."
At least one municipality within Broward County has questioned the authority of the charter county to adopt such a provision without complying with the dual referenda requirements of Article VIII, section 4, Florida Constitution. That constitutional provision, which addresses transfers of powers, states:
By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Clearly, the county is subject to the provisions of Article VIII, section4, Florida Constitution. In Sarasota County v. Town of Longboat Key,[1]
the Florida Supreme Court rejected Sarasota County's argument that Article VIII, section 1(g), Florida Constitution,[2] excluded charter counties from the dual referenda requirement of the constitutional transfer of powers provision. Thus, the Court held that the proposed charter amendment transferring the responsibility of performing five distinct governmental functions from four cities to the county was invalid because the requirements of Article VIII, section 4, had not been met.
Since the issuance of the Sarasota County opinion, the courts of this state have clarified the application of Article VIII, section 4, Florida Constitution. For example, in Broward County v. City of Fort Lauderdale,[3] the city sought to enjoin a countywide referendum proposing to amend the county charter relating to the regulation of handguns on the basis that such regulations constituted a transfer of powers under Article VIII, section 4. The Court initially recognized that the problem arose because of the "seemingly conflicting provisions of sections 1(g) and 4" of Article VIII, Florida Constitution.[4]
In allowing the referendum to proceed, the Court stated:
"A line must be drawn between these overlapping provisions. We hold that section 1(g) permits regulatory preemption by counties, while section 4 requires dual referenda to transfer functions or powers relating to services. A charter county may preempt a municipal regulatory power in such areas as handgun sales when countywide uniformity will best further the ends of government. [citation omitted] Dual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services."[5]
In a subsequent Fifth District Court of Appeal case, City of New SmyrnaBeach v. County of Volusia,[6] the county passed a charter amendment establishing a Beach Trust Commission and authorizing the county council, with the advice of the commission, to adopt a unified beach code. This code comprehensively regulated public health, safety and welfare on beaches within the county. Such regulations were to include such matters as individual conduct, pedestrian safety, vehicular access and fees, operation and parking of vehicles on beaches and approaches to beaches, and activities of vendors, concessionaires, and special events. The amendment acknowledged that municipalities could continue to deliver any services on beaches within their jurisdiction that were not to be duplicated by the county unless authorized by the municipality.
As the Supreme Court in Broward County, supra, had recognized, the Fifth District also noted that "[a]t the heart of this controversy is the tension between two apparently conflicting provisions of the Florida Constitution."[7] The city argued that the amendment constituted an impermissible transfer of the city's authority over beach services to the county. The court found, however, that none of the provisions related to the provision of services; rather, they related exclusively to the county's regulatory powers over beaches, "an area which the Beach Trust Commission found to be `conducive to countywide enforcement.'"[8]
As in the Volusia County case, the proposed charter amendment creating a fire services and standards council would establish a collegial body to develop standards regulating the provision of fire and rescue services on a countywide basis. Such regulations are to include, as in VolusiaCounty, a schedule of uniform fees. While the proposed amendment requires a regulation that the closest appropriate unit respond in life-threatening emergencies, it does not transfer the power to provide that function to the county.
In light of the above cases, I am therefore of the opinion that the adoption of a charter provision creating the Broward County Fire Services and Standards Council to develop countywide standards regulating the provision of fire and rescue services, addressing such issues as uniform fees, standardized dispatch, and minimum levels of emergency services, does not constitute a transfer of powers as contemplated by Article VIII, section 4, Florida Constitution.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] 355 So.2d 1197 (Fla. 1978).
[2] Article VIII, s. 1(g), Fla. Const., provides:
"CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances."
[3] 480 So.2d 631 (Fla. 1985).
[4] Id. at 633. The Court stated:
"If we construe `any function or power' in section 4 to give effect to the all-encompassing adjective `any,' then, assuming that virtually all ordinances constitute exercise of governmental power, all county preemptions pursuant to section 1(g) will be `transfers of power.' . . . [T]o construe section 4 as having the breadth seemingly dictated by the troublesome adjective `any' would eviscerate section 1(g) and elevate section 4 to a dominant position. This we must not do."
[5] 480 So.2d at 635.
[6] 518 So.2d 1379 (Fla. 5th DCA 1988).
[7] Id. at 1382.
[8] 518 So.2d at 1384.