935 So.2d 521 (2006)
SEMINOLE COUNTY, Florida, Appellant/Cross-Appellee.
v.
The CITY OF WINTER SPRINGS, Florida, Appellee/Cross-Appellant.
No. 5D05-81.
District Court of Appeal of Florida, Fifth District.
May 26, 2006.
Robert A. McMillan, Seminole County Attorney, Stephen P. Lee, Deputy County Attorney, and C. Allen Watts of Cobb & Cole, Deland, for Appellant/Cross-Appellee.
Anthony A. Garganese and Erin J. O'Leary of Brown, Garganese, Weiss & D'Agresta, P.A., Orlando, for Appellee/Cross-Appellant.
*523 Leonard Berger, Senior Assistant County Attorney, West Palm Beach, Amicus Curiae for The Florida Association of Counties, et al.
Thomas G. Pelham of Fowler White Boggs Banker, P.A., Tallahassee, and Catherine D. Reischmann of Stenstrom, McIntosh, Colbert, Whigham, Reischmann & Partlow, P.A., Amicus Curiae for The Florida League of Cities, Inc.
*522 LAWSON, J.
Seminole County, Florida, ("County"), appeals from a final judgment declaring invalid a County charter amendment allowing the County to regulate future development in a rural eastern section of the County. The City of Winter Springs, ("City"), cross appeals from the same judgment. We disagree with the trial court's conclusions that: (1) the ballot summary language explaining the charter amendment to the County's voters was misleading; and (2) the amendment violates the County charter's "single subject rule." We also find that the amendment constitutes a proper exercise of the County's home rule power under Article VIII of the Florida Constitution. Therefore, we reverse that part of the trial court's judgment invalidating the charter amendment, and affirm in all other respects.

Division of Local Government Powers under Florida's Constitution
Article VIII, Section 1 of the Florida Constitution requires the state to be divided into political subdivisions called "counties." Counties may be created, abolished, or changed by law, and may exist as either "charter" or "non-charter" counties. Id. Article VIII, Sections 1(f) and (g) address the powers of non-charter and charter counties, respectively, as follows:
(f) Non-charter government. Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.
(g) Charter government. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
The most significant feature of charter counties is the direct constitutional grant of broad powers of self-government, which include local citizens' power to enable their charter county to enact regulations of county-wide effect which preempt conflicting municipal ordinances. See Art. VIII, § 1(g), Fla. Const., D'Alemberte commentary, reprinted in 26A Fla. Stat. Ann. 155, 157 (West 1995) ("This entirely new subsection provides for the broadest extent of county self-government or `home rule' as it is commonly described . . . the power which may be granted to county governments under a charter is the power to have county ordinances take precedence over municipal ordinances.").
Article VIII, Section 2 of the Florida Constitution provides that "[m]unicipalities may be established or abolished, and their charters amended pursuant to general or special law." Like charter counties, the Constitution grants municipalities broad home-rule powers. A municipality "may *524 exercise any power for municipal purposes except as otherwise provided by law." Art. VIII, § 2(b), Fla. Const. These powers, however, are limited for municipalities in charter counties, where citizens are granted the constitutional right to opt for county preemption of municipal regulatory power. Art. VIII, § 1(g), Fla. Const.; Broward County v. City of Ft. Lauderdale, 480 So.2d 631 (Fla.1985).

County-City Conflict and the County's Charter Amendment
In 1994, the County acted to create an Urban/Rural boundary to protect rural and environmentally-sensitive lands in the eastern part of the County from urban sprawl. This boundary was situated along the eastern edge of the City, and was accomplished through an amendment to the County's Comprehensive Land Management Plan ("Comprehensive Plan").[1] However, because the County's charter did not provide for County preemption of conflicting municipal land use regulations, the County's Comprehensive Plan amendment was not effective in controlling urbanization of its eastern rural lands.[2]
The City could simply annex property protected from dense development under the County's Comprehensive Plan. Once incorporated within the City's jurisdiction, the City could then incorporate the land into its own comprehensive plan and change the land use designation to allow for high-density development. Because the County's charter provided that the municipal ordinance would control in the event of a conflict, the provisions of the City's newly-amended comprehensive plan would then control over the rural designation in the County's Comprehensive Plan, and development would proceed.
This pattern was well documented in the record below, with testimony regarding a dispute that arose over development of a subdivision at the eastern edge of the City known as Battle Ridge. Litigation ensued between the County and the City. The litigation settled when the County agreed to withdraw its challenge, allowing the development to proceed, with the implicit understanding that this development would represent the easternmost limit of the City's urban expansion. Shortly thereafter, however, the City increased the size of the utility lines that serviced the 110 dwelling units planned for Battle Ridge to accommodate 1300 units. The City then proceeded to annex three additional parcels immediately east of Battle Ridge and within the County-designated rural area.
In response, the Seminole County Board of County Commissioners proposed a charter amendment to the electorate that would provide for County preemption of land use regulation in the rural eastern area of the County. The measure was placed on the ballot for public vote during the 2004 general election. The ordinance sought to amend the County charter by changing the language in Article I, Section 1.4 of the charter, from:
"Municipal ordinances shall prevail over County ordinances to the extent of any conflict."

*525 to:
"Except as otherwise provided by this charter, Municipal ordinances shall prevail over County ordinances to the extent of any conflict." (emphasis added).
The ordinance also sought to add a new substantive section to Article V of the Charter. That section would provide:
Section 1.2. Rural Boundary and Rural Area
a. There is hereby established a Rural Boundary as more delineated on that certain map titled "Rural Boundary Map" and dated August 10, 2004, and a "Rural Area" as described in that certain legal description titled "Legal Description of Rural Area" and dated August 10, 2004, both of which are on file in the official records of the Clerk of the Board of the County Commissioners. "Rural Lands," for the purpose of this Section, are those contained within the area depicted in the above referenced legal description. After the effective date of this section the Future Land Use Element of the Seminole County Comprehensive Plan shall include a copy of the map and legal description.
b. The Board of County Commissioners may remove property from the "Rural Area" and amend the Rural Boundary accordingly, by ordinance whenever, in the opinion of the Board, such a change is necessary. Nothing herein shall authorize the County Commission to expand the "Rural Area" beyond the area contained in the above referenced legal description.
c. From and after the effective date of this section the future land use designations contained in the Seminole County Comprehensive Plan shall control the density and intensity of development on all Rural Lands, as that term is defined herein. The Board of County Commissioners must approve all changes to the future land use designations of all Rural Lands, regardless of whether some or all of the Rural Lands are located within a municipality.
d. The Board of County Commissioners may enact ordinances to implement this section. Municipal ordinances in conflict with this section or any implementing county ordinance are superseded to the extent of such conflict.
The obvious purpose of the amendment was to assure that the land use designations of the County's Comprehensive Plan would control the density and intensity of development on all land in the "Rural Area," regardless of whether the land was subsequently annexed into a municipality. The designated "Rural Area" only encompassed land in unincorporated Seminole County, except for one parcel annexed by the City after the charter amendment was approved for placement on the ballot.[3]
The charter amendment summary appeared on the ballot as follows:
CHARTER AMENDMENT ESTABLISHING RURAL AREA AND PREEMPTING MUNICIPAL COMPREHENSIVE LAND USE AUTHORITY WITHIN RURAL AREA.
Shall the Home Rule Charter be amended to establish a Rural Boundary and create a "Rural Area" of the County, authorize future changes reducing the size of the "Rural Area" by County ordinance; provide that the Future Land Use Designations established in the Seminole County Comprehensive Plan shall apply to all lands, incorporated *526 or unincorporated, within said "Rural Area," authorize implementing ordinances, and provide that the Charter and implementing ordinances supersede conflicting municipal ordinances. Yes _____ No _____.
The charter amendment was approved by the voters of Seminole County on November 2, 2004.

City's Legal Challenge and Ruling Below
After the amendment was approved by the electorate, the City sought to have the amendment invalidated in the action below. Following an evidentiary hearing, the trial court issued a detailed and well-reasoned order rejecting most of the City's arguments. However, the trial court accepted the City's position that the amendment was invalid because: (1) the ballot summary language explaining the charter amendment to the County's voters was misleading; and (2) the amendment violated the County charter's "single subject rule."
The trial court reached both of these conclusions after accepting the City's argument that the amendment had the unannounced effect of taking away County citizens' right to enact ordinances by referendum. According to the City, because the newly-adopted charter provision expressly stated that the "Board of County Commissioners must approve all changes to the future land use designations of all Rural Lands," it necessarily, by implication, amended Article II, Section 2.2 H of the charter, which provides a mechanism through which citizens may adopt, amend or repeal County ordinances by referendum.[4] Accepting this argument, the trial court found that although "the ballot title and summary adequately reflect the primary purpose of the proposed charter amendment," it was infirm "in its failure to inform voters that by voting affirmatively for the Charter amendment, the voters of Seminole County would thereby eliminate their reserved right to adopt and repeal ordinances related to the `Rural Area.'" The court also found that "to the extent that the proposed charter amendments eliminate the County electorate's right to adopt or repeal ordinances relating to the "Rural Area" by initiative and referendum, it is a provision unrelated to the principal purpose of the amendment. . . prohibited by the single subject requirement found in Article IV, Section 4.2 of the Seminole County Home Rule Charter."

Analysis
We find that the trial court erred in accepting the City's argument that the charter amendment affected County citizens' right to adopt and repeal land use ordinances related to the "Rural Area." First, we are not convinced that citizens can possess this right under the Local Government Comprehensive Planning and Land Development Regulation Act (the *527 "Act"). The Act sets forth a comprehensive and complex process for the adoption and amendment of comprehensive plans, which includes public hearings, specific notice requirements, and a process of review by multiple government agencies. At various stages of the process, votes are required by the local government's "governing body," including the final vote either approving or rejecting any proposed amendment. See § 163.3184, Fla. Stat. (2005). The Act expressly defines "governing body" as "the board of county commissioners of a county." § 163.3164(9), Fla. Stat. (2005).
Because this statute expressly designates the Board as the body responsible for land use planning, along with the fact that it would appear unworkable for citizens (by initiative) to successfully navigate the complex enactment process required by the Act, reading Article II, Section 2.2 H(1) of the charter as granting citizens the right to enact land use planning ordinances by initiative would be problematic, at best. If this right did not exist prior to the charter amendment, then the amendment could not have had the incidental effect argued by the City.
In addition, we agree with the County that even if this right did exist prior to the citizens' adoption of the charter amendment, the construction suggested by the City is improper. As a general rule, enactments should not be read as amending non-referenced provisions by implication. In re: Advisory Opinion to the Governor, 132 So.2d 163, 167 (Fla.1961). Rather, "if by any fair course of reasoning the statute can be harmonized or reconciled with the new . . . provision, then it is the duty of the courts to do so." Id.; see also, Chiles v. Dep't of State, Div. of Elections, 711 So.2d 151, 156 (Fla. 1st DCA 1998) ("When one statute is alleged to be in conflict with another, the court must favor a construction that gives effect to both statutes.").
As argued by the County, Article II, Section 2.1 of the County's charter provides that: "The legislative responsibilities and powers of the County shall be assigned to, and vested in, the Board of County Commissioners." This general reference does not note the exception later granted in the charter for legislative action by initiative. Yet, a fair reading of the document as a whole would not cause one to conclude that Section 2.1 is in irreconcilable conflict with the separate citizen initiative provision in Section 2.2 H(1) so that the courts would have to chose between the two. The provisions can easily be harmonized by recognizing the initiative provision as an exception to the separately-stated general rule that it is the Board that is vested with legislative authority to enact ordinances. We agree with the County that the generic reference to the Board in the charter amendment should not be read as having any more significance than the generic reference set forth in Section 2.1. Both simply recognize the Board as the body with overall legislative responsibility for the County. Therefore, if the citizens had a right to adopt regulatory land use ordinances under the Act prior to the charter amendment, nothing in the charter amendment takes that right away by implication.
As previously noted, the sole basis on which the trial court found the ballot summary misleading was the alleged amendment by implication of the citizen initiative and referendum provision. In all other respects, the court found that the summary tracked the proposed amendments fairly and in sufficient detail. See § 101.161(1), Fla. Stat. (2005) (requiring all public measures submitted for vote to be printed in "clear and unambiguous language" and to include a short statement *528 explaining "the chief purpose of the measure"); Volusia Citizens' Alliance v. Volusia Home Builders Ass'n, Inc., 887 So.2d 430, 431 (Fla. 5th DCA 2004) ("The purpose of this requirement is to provide voters with fair notice of the contents of the proposed initiative so that voters will not be misled as to its purpose."). We agree with the trial court that the ballot summary fairly and accurately summarized the purpose and effect to the proposed charter amendment.
Similarly, the trial court found a single subject violation only "to the extent that the proposed charter amendments eliminate [citizens' initiative and referendum rights]." Because we have concluded that the amendment had no such affect, we also find that the amendment did not violate the single subject provision found in Article IV, Section 4.2(C) of the County's charter.[5]
With respect to the arguments raised by the City on cross-appeal, we find that the trial court properly rejected the City's additional challenges to the charter amendment. Only one of these issues merits discussion. It involves the tension between Article VIII, Section 1(g) of the Florida Constitution (providing for county pre-emption of municipal ordinances by charter)[6] and Article VIII, Section 4 (requiring a separate vote of a city's electorate before transfer of a power from a city to a county).[7] The trial court concluded that because the Rook property was annexed prior to the charter amendment's adoption, preemption did not apply to that property. Concluding that all property affected by the amendment lay in unincorporated areas of the County, the court then determined that the dual-adoption requirement need not be addressed.
However, the "Rural Area" approved by the County's electorate clearly includes the Rook property. Therefore, at the time of adoption, the charter amendment did provide for preemption of the City's future land use regulation as to this parcel already included within the City's jurisdiction. Even including the Rook property, however, the "Rural Area" only encompassed land governed by the County's Comprehensive Plan. Section 171.062(2), Florida Statutes, provides that if an annexed area "was subject to a county land use plan and county zoning or subdivision regulations, these regulations remain in full force and effect until the municipality adopts a comprehensive plan amendment that includes the annexed area." The City concedes that it has not yet amended its comprehensive plan to include the Rook property. Therefore, even though the City completed annexation of this property prior to adoption of the charter amendment, *529 it still had not assumed regulatory control over the property's use. For this reason, we agree with the trial court's conclusion that the charter amendment did not involve a "transfer" of land use regulation over any property  and that the transfer provision of Article VIII, Section 4 was not triggered.
Moreover, even if the City had already amended its comprehensive plan to encompass the Rook property, we find that the electorate of a charter county may preempt a city's land use regulation by charter, without a dual vote of the city's electorate. As held by our Supreme Court in Broward County, 480 So.2d at 635 "section 1(g) permits regulatory preemption by counties, while section 4 requires dual referenda to transfer functions or powers relating to services." (emphasis in original). Land use regulation is just that  regulation. Therefore, dual referenda are not required. Id. This obvious conclusion is also memorialized in the Act itself, which expressly recognizes that: "In the case of chartered counties, the county may exercise such authority over municipalities or districts within its boundaries as is provided for in its charter." § 163.3171(2), Fla. Stat. (2005).
In summary, Florida's Constitution recognizes that: "All political power is inherent in the people." Art. I § 1, Fla. Const. When it comes to charter counties and municipalities within those counties, the Constitution expressly grants the electorate a right to determine by charter which government they desire to vest with preemptive regulatory power. Art. VIII, § 1(g), Fla. Const. The voters of Seminole County have made that election. With respect to the "Rural Area" of Seminole County, the people have chosen to grant preemptive land use regulatory power exclusively to the County. Their decision to do so constituted a perfectly valid election under the Florida Constitution.
AFFIRMED IN PART and REVERSED IN PART.
ORFINGER, J., and FALVEY, C., Associate Judge, concur.
NOTES
[1] Under the Local Government Comprehensive Planning and Land Development Regulation Act, §§ 163.3161 to 163.3217, Fla. Stat. (2005), land use regulation is accomplished, in part, through the adoption of comprehensive plans by counties and cities. Once approved and adopted, all land use is controlled by the designation in the applicable comprehensive plan. Comprehensive plans are intended to "prevent the overcrowding of land and avoid undue concentration of population". . . and "conserve, develop, utilize, and protect natural resources. . . ." § 163.3161(3), Fla. Stat.
[2] The County's charter expressly provided that: "Municipal ordinances shall prevail over County ordinances to the extent of any conflict."
[3] The record suggests that the City rushed annexation of this parcel, known as the "Rook property," so that the annexation could be completed prior to the public vote on the charter amendment.
[4] Under Article II, Section 2.2 H of the County's charter, the initiative process is started by a petition signed by electors "residing in at least 3/5 of the County Commission election districts and the County as a whole equal to five percent (5%) of the electors qualified to vote in the last proceeding general election." The requisite number of signatures must be secured during a six-month period that starts when a signature form is approved by the local Supervisor of Elections. If the required number of signatures are obtained during the specified period, the matter is automatically placed on an agenda for public hearing, at which the board is given an opportunity to vote on the measure. If the board fails to enact the proposed measure, it is then placed on the ballot at the next general election. If approved by a majority vote of the electors, the measure becomes effective on the date specified in the ordinance. The board is then prohibited from amending or repealing an ordinance adopted by initiative for a period of one year after the effective date.
[5] Neither the Florida Constitution nor the Florida Statutes applies a single subject rule to proposed amendments to county or city charters; therefore, any such limitation must be found within the charter itself. See Charter Review Comm'n of Orange County v. Scott, 647 So.2d 835 (Fla.1994).
[6] Article VIII, Section 1(g) provides in relevant part: "The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances."
[7] Article VIII, Section 4 provides: "Transfer of powers.-By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law."