Dear Mr. Jarret:
You have asked for my opinion on substantially the following questions:
 1. Whether the Polk County Charter may be amended to limit the power of the county and each of the county's incorporated municipalities to increase the current total residential density allocation?
 2. Whether Article VIII, section 4, Florida Constitution, requires dual referenda conducted by both the county and the individual municipalities to amend the Polk County Charter to provide for countywide uniform land regulation?
 3. Whether section 100.371, Florida Statutes, is applicable to amendments to a county charter?
According to your letter, a group of Polk County citizens is collecting signatures to place a charter amendment on the ballot that would create a countywide uniform comprehensive plan relative to the rules and regulations controlling land use and planning activities. You question whether such a countywide provision would be effective in light of the language in section 163.3174, Florida Statutes, and whether section 100.371, Florida Statutes, would control the process for amending the Polk County Charter.
Question One
Article VIII, section 1 of the Florida Constitution requires that the state be divided into political subdivisions called "counties." Counties may be created, abolished, or changed by law, and may exist as either "charter" or "non-charter" counties.[1] The powers of charter counties are framed in Article VIII, section 1(g):
 "Charter government. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances."
Thus, charter counties have a direct constitutional grant of broad powers of self-government, which include the power of county citizens to enable their county to enact regulations of county-wide effect which preempt conflicting municipal ordinances.[2]
Article VIII, section 2 of the Florida Constitution states that "[m] unicipalities may be established or abolished and their charters amended pursuant to general or special law." Like charter counties, municipalities are granted broad home-rule powers by the Constitution. For municipalities in charter counties, however, these powers are limited by the constitutional right of citizens to opt for county preemption of municipal regulatory power.[3]
Polk County adopted a charter in 1998.[4] It is, then, within the scope of the county's powers to adopt a charter provision that controls in the event of a conflict between county ordinances and municipal ordinances. Information supplied with your request indicates that you question whether the citizens' petition would divest the local government of land planning duties and responsibilities and contravene section 163.3174, Florida Statutes.
Section 163.3174, Florida Statutes, provides for local planning agencies which are generally responsible for conducting the comprehensive planning program.[5] Pursuant to section 163.3174(1), Florida Statutes, the governing body of each local government "individually or in combination" shall designate and establish by ordinance a "local planning agency." The act defines a "governing body" to mean "the board of county commissioners of a county, the commission or council of an incorporated municipality, or any other chief governing body of a unit of local government, however designated, or the combination of such bodies where joint utilization of the provisions of this act is accomplished as provided herein."[6]
It is the responsibility of the local planning agency to prepare the comprehensive plan or plan amendments and to make recommendations to the governing body regarding the adoption or amendment of the plan. As recognized by the statute, "[i] n the case of chartered counties, the planning responsibility between the county and the several municipalities therein shall be as stipulated in the charter."[7]
Further, section 163.3171(2), Florida Statutes, which prescribes areas of authority under the Local Government Comprehensive Planning and Land Development Regulation Act[8] recognizes that "[i] n the case of chartered counties, the county may exercise such authority over municipalities or districts within its boundaries as is provided for in its charter." Thus, it appears that the Legislature considered the interplay between charter county governments and the municipalities located therein and recognized that planning responsibilities may be regulated by the county charter.
A recent appellate case, Seminole County v. City of WinterSprings,[9] appears to address your questions. Seminole County, a Charter county, adopted a comprehensive plan to protect the rural areas of the county from urban sprawl. However, because the county charter did not provide for county preemption of conflicting municipal land use regulations, the City of Winter Springs was able to continue annexation and encroachment in rural areas of the county. The County adopted a charter amendment giving the County preemptive rights and assuring that the land use designations of the County's comprehensive plan would control the density and intensity of development in the rural area regardless of whether the land was subsequently annexed into a municipality. This amendment was challenged and the trial court entered a final judgment declaring the county charter amendment invalid.[10]
Seminole County sought review.
The Fifth District Court of Appeal reversed the portion of the trial court's judgment that invalidated the charter amendment but affirmed the judgment in all other respects. The Court discussed the preemption issue at length and addressed the implications of Article VIII, section 1(g) of the Constitution and the voting requirements necessary for this type of charter amendment:
 "[T] he electorate of a charter county may preempt a city's land use regulation by charter, without a dual vote of the city's electorate. As held by our Supreme Court in Broward County [v. City of Fort Lauderdale], 480 So. 2d at 635
`[Article VIII], section 1(g) permits regulatory preemption by counties, while [Article VIII], section 4 requires dual referenda to transfer functions or powers relating to services.' (emphasis in original). Land use regulation is just that — regulation. Therefore, dual referenda are not required. Id. This obvious conclusion is also memorialized in the Act itself, which expressly recognizes that: `In the case of chartered counties, the county may exercise such authority over municipalities or districts within its boundaries as is provided for in its charter.'"[11]
As the Court noted:
 "Florida's Constitution recognizes that: `All political power is inherent in the people.' Art. I s. 1, Fla. Const. When it comes to charter counties and municipalities within those counties, the Constitution expressly grants the electorate a right to determine by charter which government they desire to vest with preemptive regulatory power."[12]
This case would appear to address substantially the same issues as you have raised in your letter. While Polk County is located outside the jurisdiction of the Fifth District Court of Appeal, it is the rule that decisions of the District Courts of Appeal represent the law of Florida unless and until they are overruled by the Supreme Court.[13] A trial court is obligated to follow the decisions of other District Courts of Appeal in the state in the absence of conflicting authority and where an appellate court in its own district has not decided the issue.[14] I am aware of no decision conflicting with Seminole County v. City ofWinter Springs and therefore consider the decision therein to represent the law that controls this issue.
In sum, the Polk County Charter can be amended to limit the power of the county and each of the county's incorporated municipalities to increase total residential density. Such a change may be effected through Article VIII, section 1(g), Florida Constitution, and the statutes implementing this constitutional provision as discussed inSeminole County v. City of Winter Springs.
Question Two
Your second question relates to the Florida constitutional referenda requirements for amending the Polk County Charter to provide for countywide uniform land regulation.
Article VIII, section 4, Florida Constitution, provides that
"By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law."
In Broward County v. City of Fort Lauderdale,[15] the Florida Supreme Court considered the scope of this constitutional provision and its operation with Article VIII, section 1(g), Florida Constitution, which authorizes counties to provide by charter for whether municipal or county ordinances shall prevail in the event of a conflict. The court held that:
 "[S]ection 1(g) permits regulatory preemption by counties, while section 4 requires dual referenda to transfer functions or powers relating to services. (emphasis in original) A charter county may preempt a municipal regulatory power . . . when county-wide uniformity will best further the ends of government. s. 125.86(7), Fla. Stat. (1983). Dual referenda are necessary when the preemption goes beyond regulation and intrudes upon a municipality's provision of services."[16]
The Court delineated a distinction between regulatory preemption, and a transfer of functions and powers relating to services in order to achieve a balance between sections 1(g) and 4.[17]
According to the information you have supplied to this office, the proposed Polk County charter amendment deals with land regulation. The Florida Supreme Court in Broward County and the District Court of Appeal in Seminole County, supra, have determined that land regulation is regulation within the scope of Article VIII, section 1(g), Florida Constitution, and does not implicate Article VIII, section 4.[18]
Thus, based on the holdings in the Broward County and SeminoleCounty cases, it is my opinion that a proposed charter amendment creating a uniform comprehensive plan for land use and planning does not constitute a transfer of powers pursuant to section 4, Article VIII, Florida Constitution. Therefore, a countywide referendum dealing with the issue is required, but separate referenda in all the affected municipalities and the county pursuant to Article VIII, section 4, are not.[19]
Question Three
You have asked whether section 100.371, Florida Statutes, is applicable to county charter amendments. While it is the policy of this office to refer questions requiring the interpretation of the Florida Election Code, Chapters 97-106, Florida Statutes,[20] to the Division of Elections in the Department of State,[21] I would note that section100.371, Florida Statutes, provides procedures for placement on the ballot of constitutional amendments proposed through citizen initiative. Nothing in the statute relates to local charter amendment procedures[22] and this office has not been advised that Polk County has incorporated any of the language of section 100.371, Florida Statutes, into its charter.
Sincerely,
Bill McCollum
Attorney General
BMC/gh
[1] See Art. VIII, s. 1, Fla. Const. 
[2] See Art. VIII, s. 1(g), Fla. Const., D'Alemberte Commentary, 26A Fla. Stat. Ann. 155, 157 (West 1995) ("This entirely new subsection provides for the broadest extent of county self-government or `home rule' as it is commonly described . . . the power which may be granted to county governments under a charter is the power to have county ordinances take precedence over municipal ordinances.")
[3] Article VIII, s. 1(g), Fla. Const.; Broward County v. City of Ft.Lauderdale, 480 So. 2d 631 (Fla. 1985).
[4] See www.polkcharter.com/intro.shtm.
[5] See s. 163.3174(4), Fla. Stat.
[6] Section 163.3164(9), Fla. Stat.
[7] Section 163.3174(1)(b), Fla. Stat.
[8] Section 163.3161 — 163.3217, Fla. Stat.
[9] 935 So. 2d 521 (Fla. 5th DCA 2006), rehearing denied, 2006 Fla. App. Lexis 14823 (Fla. 5th DCA 2006).
[10] The trial court held that the ballot summary language explaining the charter amendment to the County's voters was misleading; and that the amendment violated the county charter's single subject rule.
[11] Section 163.3171(2), Fla. Stat. (2005).
[12] Article VIII, s. 1(g), Fla. Const. 
[13] Chapman v. Pinellas County, 423 So. 2d 578 (Fla. 2nd DCA 1982).
[14] McGauley v. Goldstein, 653 So. 2d 1108 (Fla. 4th DCA 1995).
[15] 480 So. 2d 631 (Fla. 1985).
[16] 480 So. 2d at 635.
[17] Id.
[18] See Seminole County v. City of Winter Springs, 935 So. 2d 521
(Fla. 5th DCA 2006) rehearing denied 2006 Fla. App. Lexis 14823 (Fla. 5th DCA 2006).
[19] See also, Ops. Att'y Gen. Fla. 02-33 (2002), 95-50 (1995), 95-49 (1995), 92-33 (1992), and 90-77 (1990), discussing Article VIII, section4, Florida Constitution.
[20] See s. 97.011, Fla. Stat.
[21] See Department of Legal Affairs Statement Concerning Attorney General Opinions, available at www.myfloridalegal.com / AG Opinions.
[22] The Department of State, Division of Elections, has been contacted and concurs in this conclusion.